IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEVAR K. JONES, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN FISHER, et al., | : | NO. 11-cv-06705 |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                    October 16,  2013


Before the Court for Report and Recommendation is the *pro se* petition of Levar K. Jones

("Jones" or "Petitioner") for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. §

2254.   Jones is currently incarcerated at the State Correctional Institute Smithfield, in

Huntingdon, Pennsylvania, serving a sentence of life imprisonment that arises out of a

prosecution in the Philadelphia Court of Common Pleas in 2000 for first-degree murder and

other offenses.[1]  In his petition, Jones asserts three grounds which he claims entitle him to habeas

relief.  For the reasons set out below, we find that his application for the issuance of the writ is

without merit.  Accordingly, we are unable to recommend that relief be granted.

---

[1] While Petitioner is currently confined in the Middle District of Pennsylvania, which includes Huntingdon County,
*see* 28 U.S.C. § 118(c), venue is proper here pursuant to 28 U.S.C. § 2241(d) in that his confinement grew out of a
prosecution and conviction in a court of common pleas within the Eastern District of Pennsylvania.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

On November 21, 2000, a jury in the Philadelphia Court of Common Pleas found Jones guilty of second-degree murder, robbery, aggravated assault, possessing an instrument of crime, and criminal conspiracy. The trial court Judge James J. Fitzgerald[3], gave the following description of the events leading to the conviction:

> [Jones] was arrested [on charges] . . . relating to the armed robbery of "Frank & Nate's Variety Store" on April 23, 1998. The owner of the store, Mr. Frank Rucker, was the victim of an assault by point of gun, and, Ms. Anita Kirby (age, 59), the cashier, was killed during the course of the robbery.
>
> . . . A "security camera" within [the store], filmed the robbery and shooting of Ms. Kirby on April 28,[4] 1998, and a video tape of the incident was admitted into evidence and shown to the jury.
>
> . . . Mr. Rucker identified [Jones] at trial . . . He testified that while one of the felons pointed a gun at Ms. Kirby, who was behind the counter, [Jones] stood near the exit door and directed him (Mr. Rucker), by point of gun, to "get down." Mr. Rucker also testified that [Jones] yelled, "don't shoot" to his confederate, but he then heard a shot, and that about $250.00 was taken from the cash register.
>
> Miss Jennifer Davis (age 14) testified that she was a patron in the store at the time of the incident, knew [Jones], and recognized [his] "voice," and identified him at trial.

*Commonwealth v. Jones*, CP-51-CR-0505781-1998, slip opin. at 1, 3-4 (Phila. Comm. Pl. Ct.

---

[2] In preparing this Report, we have reviewed Jones' *pro se* petition for the issuance of a writ of habeas corpus ("Pet.") (Doc. No. 1); Jones' "Memorandum of Law in Support of Petition for Writ of Habeas Corpus" ("Memo.") (Doc. No. 8) and attached exhibits; the District Attorney of Philadelphia County's "Response to Petition for Writ of Habeas Corpus" ("Resp.") (Doc. No. 17) and attached exhibits ("Resp. Exh."); Jones' "Traverse" in reply to the District Attorney's response (Doc. No. 21); and the documents contained in the file received from the Superior Court Prothonotary ("St. Ct. Rec.").

[3] Judge Fitzgerald is now a Senior Judge of the Superior Court of Pennsylvania, having been appointed to that position in 2008. The Unified Judicial System of Pennsylvania, "Senior Judge James J. Fitzgerald, III," http://www.pacourts.us/courts/superior-court/superior-court-judges/senior-judge-james-j-fitzgerald-iii (last visited Oct. 14, 2013).

[4] Although the events that led to Jones' conviction occurred on April 23, 1998, in this one instance, the trial court erroneously refers to the date as April 28, 1998. This appears to us to be scrivener's error. The parties do not contend otherwise.

Jan. 17, 2003) (citations omitted) [Resp. Exh. C.]  Judge Fitzgerald then described Jones' arrest:

> [Jones] was arrested later in the evening, at his home, at 1713 Taney Street.  Detective James Dougherty interviewed him at 7:40 p.m.  [Jones] was allowed to confer with his mother, Ms. Marcia Jones, and [he] subsequently waived his Miranda right[s] and gave a voluntary statement, wherein he admitted to discussing a plan to rob the store, with two other males.  However he denied involvement in the actual robbery.

*Id.* at 5.

Immediately after the jury returned the verdict, the court sentenced Jones to a mandatory term of life imprisonment for second-degree murder.  *Id.* at 2.  Two months later, on January 25, 2001, the court imposed a further aggregate sentence of twenty to forty years imprisonment for his remaining crimes, to run concurrently with the sentence of life imprisonment.  *Id.*  Jones, through his trial attorney, Michael Wallace, Esq., then filed a timely post-sentence motion on January 26, 2001.  *Id.*  The court denied the motion on May 29, 2001.  *Id.*  Jones did not file a timely direct appeal.  *Id.* at 3.

On November 26, 2001, proceeding *pro se*, Jones filed a petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 et. seq., seeking reinstatement of his direct appeal rights.  [Resp. Exh. A.]  The PCRA court appointed counsel, David Rudenstein, Esq.  [*Id.* at 9.]  On March 31, 2002, Mr. Rudenstein filed an amended PCRA petition, and on July 30, 2002 the PCRA court granted the petition and permitted Jones to file a direct appeal *nunc pro tunc*. [*Id.*]

On March 24, 2003, represented by Mr. Rudenstein, Jones filed a *nunc pro tunc* direct appeal which challenged the sufficiency and the weight of the evidence.  [Resp. Exh. D at 3.].  On October 29, 2003, the Pennsylvania Superior Court affirmed the judgments of sentence.  *Commonwealth v. Jones,* No. 2624 EDA 2002 (Phila. Ct. Com. Pl. Jan. 25, 2001).  [Resp. Exh.

E.] Jones did not seek further review in the Pennsylvania Supreme Court.

On September 17, 2004, proceeding *pro se*, Jones filed a PCRA petition. [Resp. Exh. F.] He filed another *pro se* PCRA petition on September 28, 2004. [*Id.*] The PCRA court then appointed counsel, James S. Bruno, Esq. to represent Jones. [Resp. Exh. G.] On July 18, 2006, almost two years after Jones submitted his *pro se* petition, Mr. Bruno submitted an amended PCRA petition which clarified the claims presented in the *pro se* petition. [*Id.*] The amended petition presented two claims: (1) trial counsel was ineffective for failing to call Jones as a witness; and (2) trial counsel was ineffective for failing to call three individuals as character witnesses. [*Id.* at 4.] On August 28, 2006, Mr. Bruno filed an "Amendment to Supplemental PCRA Petition" to present two more claims, both relating to trial counsel's failure to call an alibi witness. [*Id.* at 13.] After a hearing on October 17, 2007, the court denied the petition. [Resp. Exh. H].

Jones then filed a notice of appeal from the order denying PCRA relief, but his then PCRA attorney, Mr. Bruno, failed to file a Pa.R.A.P. 1925(b) statement or an appellate brief. (Appeal Docket Sheet at 3) [Resp. Exh. I.] As a result, on June 17, 2008, the Superior Court remanded for a determination as to whether Mr. Bruno had abandoned Jones as counsel. (*Id.* at 6.) At a subsequent hearing held a month later, the court found that Jones had been abandoned by counsel, and it appointed new counsel, Janis Smarro, Esq. (*Id.*)

On December 5, 2008, Ms. Smarro then filed a 1925(b) statement and brief raising a claim which Jones had not presented in his amended PCRA petition: that "post-conviction counsel [Mr. Bruno] was ineffective when he failed to raise the issue of appellate counsel's [Mr. Rudenstein's] failure to raise in direct appeal the issue of the trial court's ruling which allowed the Commonwealth to play in slow motion form a surveillance video tape of the robbery and

murder which formed the basis of [Jones'] conviction." (PCRA Appeal at 12-31) [Resp. Exh. J.] On October 24, 2008, the PCRA court granted Jones a new hearing on this claim, and the Commonwealth appealed. *Commonwealth v. Jones*, CP-51-CR-0505781-1998 (Phila. Comm. Pl. Ct. Oct. 24, 2008). [Resp. Exh. J at 42-52.] On May 13, 2009 the Superior Court dismissed the Commonwealth's appeal, and on August 18, 2009 the PCRA court conducted a hearing at which both direct appeal counsel and PCRA counsel testified. (N.T. 08/18/09 at 1-40.) The PCRA Court granted relief, "conclu[ding] that appellate counsel and PCRA counsel were without a reasonable basis in failing to raise the claim and that the failure to raise the claim prejudiced [Jones]. *Commonwealth v. Jones*, CP-51-CR-0505781-1998, slip opin. at 12 (Phila. Comm. Pl. Ct. Oct. 24, 2008).

The Commonwealth then appealed the PCRA court's ruling and, on March 17, 2011, the Superior Court reversed the PCRA court, concluding that appellate counsel and PCRA counsel could not be deemed ineffective for failing to raise the claim since the trial court did not, in fact, abuse its discretion in allowing the surveillance tape to be played in slow motion. *Commonwealth v. Jones,* No. 2719 EDA 2009 (Phila. Ct. Com. Pl. Aug. 18, 2009). [Resp. Exh. P.] Jones then petitioned for allowance of appeal to the Pennsylvania Supreme Court, which denied review on September 14, 2011. [Resp. Exh. R.]

On October 26, 2011, Jones submitted the present *pro se* petition pursuant to 28 U.S.C. § 2254.[5] ("Pet.") (Doc. No. 1.) This petition was referred to the undersigned for a Report and Recommendation on December 1, 2011. (Doc. No. 3.) On March 16, 2012, Jones filed his "Memorandum of Law in Support of Petition for Writ of Habeas." ("Memo.") (Doc. No. 8.) On July 2, 2012, the Philadelphia District Attorney's Office submitted its "Response to Petition for

---

[5] There is no timeliness issue with Jones' petition. It was filed well within the one year period of limitation for filing of an application of a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Respondents do not dispute this.

Writ of Habeas Corpus." ("Resp.") (Doc. No. 17.) On September 12, 2012, Jones then submitted his reply to the District's attorney's response. (Doc. No. 21.)

In his petition, Jones claims ineffective assistance of counsel in that (1) his direct appeal and PCRA counsel failed to raise the issue of the trial court's ruling which allowed the Commonwealth to play in slow motion a surveillance video tape of the robbery and murder which formed the basis of his conviction[6] (Pet. at 9) (Memo. at 1-25); (2) trial counsel failed to request a "limited purpose" instruction for the video (Pet. at 9); and (3) trial counsel failed to object to "use of video as putting an uncharged defendant, (shooter), on trial to convict [Jones]." (*Id.*)

## II.    DISCUSSION

Respondents argue that Jones' third claim, that trial counsel failed to object to "use of video as putting an uncharged defendant, (shooter), on trial to convict [Jones]," is procedurally defaulted. (Resp. at 16 n.5.) Accordingly, we will first set out the requirements for exhaustion, and then explain why we conclude that this claim is procedurally defaulted. Finally, we move on to discuss Jones' first and second claims, which have been properly exhausted and must, therefore, be considered on the merits.

### A.    Exhaustion and Procedural Default

A prerequisite to the issuance of a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment is that the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In order for petitioner to satisfy this requirement and give the state courts "one full opportunity to resolve any constitutional

---

[6] The District Attorney's Office states that Jones is also claiming that his "trial . . . counsel [was] ineffective for not objecting to the introduction of the video shown in slow motion to the jury." (Resp. at 16.) This is inaccurate. In fact, on the first page of his memorandum of law, Jones states that "trial counsel vigorously objected to the admissibility of the slow motion video tape shown during trial." (Memo. at 1-2.)

issues," he must have "fairly presented" the federal claim to the state courts "by invoking one complete round of the established appellate review process." *Picard v. Connor*, 404 U.S. 270, 275 (1971); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This requirement ensures that state courts have "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). If a bypassed state remedy is no longer available because it is time-barred due to a state limitations period, the petitioner will be deemed to have procedurally defaulted those claims. *O'Sullivan*, 526 U.S. at 848. A claim will be considered defaulted if the state court denied relief based upon a state procedural rule that was independent of the merits of the federal question presented and adequate to support the denial of relief, e.g., one that was consistently and regularly applied at the time the procedural default occurred. *See*, *e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *Harris v. Reed*, 489 U.S. 255, 260 (1983).

Where a claim is procedurally defaulted, it cannot provide a basis for federal habeas relief unless the petitioner shows "cause of the default and actual prejudice as a result of the alleged violations of federal law, or [unless he] demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause, the petitioner must show "that some objective factor external to the defense impeded [] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, the petitioner must show "actual prejudice resulting from the errors of which he complains." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). To establish a fundamental miscarriage of justice, a petitioner must provide new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is

actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (emphasis in original); see also *Cristin v. Brennan*, 281 F.3d 404, 412 (3d. Cir. 2002).

Respondents contend that Petitioner failed to properly exhaust his third claim in state court.  (Resp. at 16 n.5.)  We agree.

In his form habeas petition, Jones alleged that trial counsel provided ineffective assistance for his "failure to object to use of video as putting an uncharged defendant, (shooter), on trial to convict petitioner."  (Pet. at 9.)  In order to determine whether this claim has been properly exhausted in state court, we must consider whether it was "fairly presented" to the state court "by invoking one complete round of the established appellate review process." *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  We observe initially that Jones did not raise this issue on direct appeal, nor would he have been able to do so since the "[Superior] Court cannot engage in a review of ineffective assistance of counsel claims on direct appeal absent an 'express, knowing and voluntary waiver of PCRA review." *Commonwealth v. Barnett*, 25 A.3d 371, 377 (Pa. Super. Ct. 2011) (quoting *Commonwealth v. Liston,* 977 A.2d 1089, 1096 (Pa. 2011)).  We further observe that Jones failed to raise the "uncharged defendant claim" at any stage of the PCRA process, both before the trial court or in his timely PCRA appeal to the Superior Court.  (PCRA Appeal at 12-31.)  We note that on PCRA appeal Jones only raised the issue of whether "post-conviction counsel [Mr. Bruno] was ineffective when he failed to raise the issue of appellate counsel's [Mr. Rudenstein's] failure to raise on direct appeal the issue of the trial court's ruling which allowed the Commonwealth to play in slow motion form a surveillance video tape of the robbery and murder which formed the basis of [Jones'] conviction."  (*Id.*)

By failing to raise this third claim on PCRA, Jones did not "fairly present" it to the state courts, and he has not met the *Picard* standard. *Picard v. Connor*, 404 U.S. at 275; *O'Sullivan v. Boerckel*, 526 U.S. at 845. This claim is therefore unexhausted as it is time barred and Jones can no longer raise it in state court. It is therefore procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848 (holding that if a state remedy is no longer available because it is time barred due to a state limitations period, the petitioner will be deemed to have procedurally defaulted those claims.)

The *Picard* standard notwithstanding, procedurally defaulted claims can provide a basis for federal habeas relief if Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Here, in our clerk's habeas petition form, Jones fails to assert any reason for not having presented this claim in state court despite the clear instructions on the form telling him to do so. (Pet. at 10.) Further, Jones provides no explanation to this effect in his memorandum of law or in his reply to the District Attorney's response. In fact, neither of these submissions even address this claim. Accordingly, we deem the ineffective assistance of counsel claim for trial counsel's "failure to object to use of video as putting an uncharged defendant, (shooter), on trial to convict petitioner" to be procedurally defaulted.

**B.     Properly raised claims**

The two claims that Petitioner has properly exhausted are his ineffective assistance claims (1) for direct appeal and PCRA counsel failing to litigate the claim that the trial court abused its discretion in allowing in the slow motion video evidence; and (2) for trial counsel's

failure to request a "limited purpose" instruction for the video. To evaluate these claims, we first set out the legal standards for issuance of the writ and for ineffective assistance of counsel.

### 1.    Standard for Issuance of the Writ

In cases where the claims presented in the federal habeas petition were adjudicated on the merits in the state courts, the federal court shall not grant habeas relief unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has made it clear that a writ may issue under the "contrary to" clause of Section 2254(d)(1) only if the "state court applies a rule different from the governing rule set forth in [United States Supreme Court] cases or if [the state court] decides a case differently than [the United States Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A writ may issue under the "unreasonable application" clause only where there has been a correct identification of a legal principle from the Supreme Court but the state court "unreasonably applies it to the facts of the particular case." *Id.* This requires the petitioner to demonstrate that the state court's analysis was "objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). When assessing the reasonableness of the state court's application of clearly established federal law to the claim that was before it, the federal court's review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits absent extraordinary circumstances not present here. *Cullen v. Pinholster*, 563 U.S. --- , 131 S. Ct. 1388, 1398 (2011).

### 2.    Standard for Ineffective Assistance of Counsel

The Supreme Court's standard for claims of ineffective assistance of counsel in violation of the Sixth Amendment is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and has been reaffirmed consistently since. Pursuant to *Strickland*, counsel is presumed to have acted effectively unless the petitioner can demonstrate both that "counsel's representation fell below an objective standard of reasonableness" and that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 686-88, 693-94. To satisfy the deficient performance prong of this analysis, the petitioner must show "'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. --- , 131 S. Ct. 770, 778 (2011) (quoting *Strickland*, 466 U.S. at 687). In considering this part of the standard, the reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). The Court recognizes that there are "'countless ways to provide effective assistance in any given case'" and that "'[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *Id.* at 778-89 (quoting *Strickland*, 466 U.S. at 689). In assessing whether counsel performed deficiently, the court must "'reconstruct the circumstances of counsel's challenged conduct' and 'evaluate the conduct from counsel's perspective at the time.'" *Id.* at 779 (quoting Strickland, 466 U.S. at 689). "[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Id.* at 791 We now turn to Petitioner's claims.

### 3. Counsel's Failure to Raise the Claim That the Trial Court Abused Its Discretion in Admitting the Slow Motion Video into Evidence

Jones claims that direct appeal counsel (Mr. Rudenstein) and PCRA counsel (Mr. Bruno) were ineffective in that they failed to raise the claim that the trial court abused its discretion in allowing the slow-motion surveillance video into evidence. (Pet. at 9) (Memo. at 18.) In order to give our discussion of the PCRA court's treatment of this issue some context, we will begin by discussing the video itself and the circumstances surrounding its admission into evidence at the trial court.

### a. The Slow Motion Video

The surveillance videotape of Frank and Nate's Variety Store captured the robbery and murder for which Jones was convicted. *Commonwealth v. Jones*, CP-51-CR-0505781-1998, slip opin. at 3 (Phila. Comm. Pl. Ct. Jan. 17, 2003). The Commonwealth first sought to play the slow motion version of the videotape to the jury in its opening statement, the record reflecting the following exchange between the Court, the prosecutor, and defense counsel at sidebar, and prior to opening statements:

> COURT: What do you wish to do in your opening? Tell us exactly what you wish to do in your opening.
> [PROSECUTOR]: It's a videotape of the actual crime taken from a surveillance camera.
> COURT: Do you wish to slow it down in your presentation of the opening or anything of that nature?
> [PROSECUTOR]: Yes, sir.
> COURT: What is the purpose of that in the opening?
> [PROSECUTOR]: The opening we will be arguing the – this goes beyond felony murder, into specific intent.

(N.T. 11/14/00 at 140.) Defense counsel then objected to the playing of the slow motion version of the video during the opening statement, and the Court ruled in in his favor, stating that "an adjusted presentation of this video by slowing down or anything of that nature is not allowed in

the opening." (*Id.* at 141.) The prosecutor then showed the three or four minute videotape to the jury at its normal speed during the opening, to which defense counsel did not object. (*Id.* at 145-151.) Defense counsel did, however, retain his objection to the slow motion version – which ran 11 minutes, and captured an abbreviated period of time between 23 and 28 seconds, from when Jones and his accomplice entered the store until the shooting – from being played later in the trial. (*Id.* at 146; N.T. 11/15/00 at 106-109.)

Later in the trial, when the Commonwealth called Detective Richard Reinhold, the detective assigned to the murder, the prosecutor sought to play the slow motion video to the jury. (N.T. 11/15/00 at 85.) Defense counsel objected, and the trial court judge called counsel to sidebar. (*Id.*) The following exchange between the prosecutor and the judge then occurred at sidebar:

> COURT: When you say slow motion, what are you going to do with the slow motion?
> [PROSECUTOR]: We go frame by frame, step by step until even after the shot is fired and from the slow down, you can actually see the projectile striking her, going through her body, coming to rest approximately where the technician said he found it.
> COURT: You're not cutting out part of the tape to do this, are you?
> [PROSECUTOR]: No, sir. We just moved it forward to that.

(*Id.* at 88-89.) The prosecutor then went on to explain to the trial court judge that the jury would first see the tape in real time and then in slow motion, that there would be no sound with the slow motion version of the video, that the jury would receive no explanation about it, and that the slow motion video would be stopped once the shot was fired and the victim went down. (*Id.* at 89-91.)

At this point, the judge asked to hear from defense counsel:

> [DEFENSE COUNSEL]: Judge, to me, it's a total distortion of the evidence. It has no – I mean, it's prejudicial for one thing, because

in watching it yesterday in slow motion,[7] you literally see the impact of the bullet on her shirt. You'll see the shirt move, and I think you can almost see it come out the other side . . . What's the purpose of that other than to prejudice the jury? It doesn't go to the cause of death. Coroner's going to be called, she was shot, hit organs, and it killed her. There's no question. It's only done to impact the jury with the prejudicial effect of the bullet. It has no relevance to this case.

(*Id.* at 91.) Defense counsel then went on to argue that, in normal speed, it looked like the shooting was an accident, since the gun went off when the shooter banged the desk, and you see the shooter "jump, which clearly indicates he was as shocked as anyone else that gun [sic] went off." (*Id.* at 92-93.) In slow motion, however, defense counsel argued, "it looks like a nice deliberate shooting . . . like he's [the shooter] standing there for 15 seconds before he pulls the trigger." (*Id.* at 93-94.) The judge then heard from the prosecutor, asking him "[w]hat are you going to accomplish with the slow motion viewing?" (*Id.* at 95.) The prosecutor responded:

[PROSECUTOR]: One of the elements that the Commonwealth will ask the Court to charge is that third prong of second degree murder that says even if you find an underlying felony, if all other elements of first degree are present, nevertheless, you can find first degree.[8] Now, that's a jury question. [Defense counsel] says it [the normal speed video] shows the hand banging. I watched this a number of times. I don't see that. What I see is at all times from fast to slow, he has that gun pointed at her midsection and she is saying, don't shoot, I'll give you the money.

---

[7] Defense counsel is referring to having already watched the slow motion version of the video with the judge and the prosecutor *in camera*. This exchange occurred before the jury watched the slow motion version of the video.

[8] There is no third prong to second degree murder. 18 Pa. C.S.A. § 2502(b) (stating that "[a] criminal homicide constitutes murder of the second degree where it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony"); Pennsylvania Suggested Standard Criminal Jury Instructions, Second-Degree Murder, § 15.2502B (1st Ed.) (1991) (containing no reference to a third prong of second-degree murder which instructs the jury to find first degree murder if the defendant had the specific intent to kill). However, since Jones was also charged with first degree murder, the prosecutor's erroneous reference to this "third prong" of second degree murder does not change the fact that the jury did have to reach the question of whether Jones had the specific intent to commit the murder. *Id.* at § 2502(a) (stating that "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.").

(*Id.*at 95-96.)  The Court then reviewed the slow motion videotape *in camera*, and ruled that the tape could be shown to the jury at normal speed as well as in slow motion.  (*Id.* at 98.)

### b.  The Evidentiary Hearing and The PCRA Court's Opinion

On Jones' second PCRA, when he was represented by Janis Smarro, Esq., Court of Common Pleas Judge M. Teresa Sarmina considered the claim that Petitioner's appellate and first PCRA counsel was ineffective in failing to litigate the claim that the trial court abused its discretion in admitting the slow motion videotape into evidence.  The PCRA court held an evidentiary hearing on August 18, 2009 at which both direct appeal counsel (Mr. Rudenstein) and previous PCRA counsel (Mr. Bruno) testified.  (N.T. 08/18/2009 at 1-40.)  At the hearing, both Mr. Rudenstein and Mr. Bruno explained their reasons for not having challenged the playing of the video in slow motion.  (*Id.* at 5-16.)  Mr. Rudenstein identified three reasons: (1) the issue did not affect the verdict for second-degree murder since "the tape was being slowed down in an effort to demonstrate the specific intent to kill," which is not an element of second-degree murder; (2) Jones' statement, which placed him at the scene of the crime as the lookout and was offered into evidence, would have made any argument that the slow motion videotape affected the verdict implausible; and (3) it would have been difficult to show that Judge Fitzgerald, "a very learned judge," had abused his discretion in allowing the slow motion video tape into evidence.  (*Id.* at 8-9.)  Mr. Bruno then identified similar reasons for not having brought up the issue of the slow-motion video as Jones' PCRA counsel, saying that he believed that there was no merit to the issue in light of the acquittal for first-degree murder.  (*Id.* at 15-16.)

In determining whether Mr. Rudenstein and Mr. Bruno had provided effective assistance, the PCRA court applied the Pennsylvania presumption that counsel has rendered effective assistance.  *Commonwealth v. Jones*, CP-51-CR-0505781-1998, slip opin. at 6 (Phila. Comm. Pl.

Ct. Jan. 20, 2010). In order to overcome this presumption, a criminal defendant "must prove (1) that the underlying claim has arguable merit, (2) that counsel's conduct was without a reasonable basis designed to effectuate his or her client's interest, and (3) that counsel's ineffectiveness prejudiced the [defendant]." *Id.* (quoting *Commonwealth v. Allen*, 833 A.2d 800, 802 (Pa. Super. 2003).

Despite the testimony of Mr. Rudenstein and Mr. Bruno, the PCRA court ruled in favor of Jones. The court first found that "the trial court abused its discretion . . . by permitting the Commonwealth to present to the jury this chilling and distorted portion of the tape." *Id.* at 18. As such, the first two prongs of the Pennsylvania ineffectiveness of counsel standard were met. *Id.* The court further found that the prejudice prong of the test had also been met, in that "[Jones] was . . . prejudiced when appellate counsel failed to raise this issue on appeal." (*Id.*) The Commonwealth then appealed the ruling of the PCRA Court to the Superior Court. *Commonwealth v. Jones,* No. 2719 EDA 2009 (Phila. Ct. Com. Pl. Aug. 18, 2009).

### c.     The Superior Court

The Superior Court applied the same three-prong Pennsylvania ineffectiveness standard to Jones' appeal. *Id.* at 15. As many courts have recognized, this three-prong standard has been held to be equivalent to the two-prong Sixth Amendment standard outlined in *Strickland*. Therefore, we are satisfied that the state court adjudication of this claim identified the correct Constitutional standard to apply, notwithstanding its citation to Pennsylvania authorities. Accordingly, we move to an assessment of whether the state court's rejection of this Sixth Amendment claim could be considered an "unreasonable application" of *Strickland*.

The Superior Court first considered the question of whether the claim that the trial court abused its discretion in admitting the slow-motion videotape was of arguable merit. *Id.* at 9.

The court noted that, as both Jones and the Commonwealth recognize, there is only one reported decision in Pennsylvania, *Commonwealth v. Hindi,* 631 A.2d 1341 (Pa. Super. 1993), which concerns the admissibility of slow-motion videotape. *Id.* at 11. *Hindi* found that "[i]n determining whether to admit into evidence slow motion or freeze frame video, the standard to be applied by the trial court is the same as it is for the admission of other evidence. It must be relevant and material and its probative value must outweigh its prejudicial impact." *Id.* at 1345. The state court further recognized that *Hindi* established a procedure of "particular relevance to [Jones'] case" for trial judges to follow when determining the admissibility of slow motion video evidence:

> In a sense, all slow motion and freeze frame video distorts reality. It distorts it in the same way that magnification of a photograph distorts reality. Such distortion may enhance the jury's understanding or it may do the opposite. It is the function of the trial court, as was done in this case, to view the evidence in camera. If the judge concludes that the jury's understanding will be enhanced and that the slow motion or freeze frame is more probative than prejudicial, then the judge should admit the evidence. **Of primary relevance is the purpose for which the party offers a slow motion or freeze frame version of the videotape.**

*Commonwealth v. Jones,* No. 2719 EDA at 12-13 (citing *Hindi,* 631 A.2d at 1345) (emphasis added).

The Superior Court noted that "[t]he [slow motion] tape was being offered as evidence of specific intent to kill," specifically to "rebut Jones' argument that the gun fired accidentally, when his accomplice banged it against the counter." *Id.* at 13. Therefore, the court found, "the tape was highly probative." *Id.* As for the prejudicial effect of admitting the slow motion video, the court noted that "[t]he jury obviously understood the tape was being played in slow motion rather than in real time," given that they "saw the tape played at regular speed, twice," and that

"[defense counsel] made the point to the jury that the slow motion version of the videotape took 11 minutes to play, whereas the incident itself took place in only 23-28 seconds." *Id.* at 13 (citation omitted). Accordingly, the Superior Court found that the "admission of the tape in slow motion had little, if any, prejudicial effect," *Id.* at 13, and concluded that "the trial court did not abuse its discretion in allowing the jury to see the videotape in slow motion." *Id.* at 14. In light of its legal conclusion, the Superior Court determined that this claim lacked merit, and that "counsel cannot be deemed ineffective for failing to have raised it either on direct appeal or in Jones' PCRA petition." *Id.* at 15.

We find nothing "objectively unreasonable" in the state courts' evaluation of this claim. The state court identified the reason why the Commonwealth sought to introduce the slow motion video, and it is clear from the record (*see* discussion on pp. 12-14) that the tape was highly probative as evidence of specific intent and to rebut Jones' argument that the shooting was an accident. Any prejudicial effect from allowing the jury to view the slow motion tape was minimized by the fact that the jury understood that they were viewing a slowed down version of events, given that they also saw the video twice in real time. Moreover, it is also clear from the record that the trial court judge followed the *Hindi* court's procedure, having viewed the slow motion videotape *in camera* before making his admissibility determination. (N.T. 11/14/2000 at 145-146.) In light of the above, we conclude that the state court was not "objectively unreasonable" in determining that this claim lacked merit, and we are not convinced that appellate and PCRA counsel acted unreasonably for not having litigated this claim. Our conclusion that this claim does not warrant habeas relief is further supported by the "doubly deferential" standard with which we are to evaluate a state court's conclusions on ineffectiveness

claims.  *See Knowles v. Mirzayance,* 566 U.S. 111, 123 (2009); *see also Harrington v. Richter,* -- U.S. --- 131 S. Ct. 770, 788 (2011).

Although we are not required to do so, having found that Jones does not meet the "deficient performance prong" of *Strickland*, we will also address the prejudice prong of *Strickland*, given that the Superior Court did the same in its opinion.  *Commonwealth v. Jones,* No. 2719 EDA 2009, slip opin. at 15-16 (Phila. Ct. Com. Pl. Aug. 18, 2009).  Here, the Superior Court again noted that "[t]he Commonwealth sought to introduce the surveillance videotape in slow motion in order to show specific intent to kill."  *Id.* at 15.  However, Jones was acquitted of first degree murder and found guilty of second degree murder (felony murder), which does not require specific intent to kill.  *Id.*  Accordingly, the Superior Court found that since "Jones was found not guilty of intentional homicide, he cannot demonstrate how he was prejudiced by admission of the slow motion version of the videotape."  *Id.*

Again, we find nothing "objectively unreasonable" in the state courts' evaluation of this claim.  It is clear that, because Jones was acquitted of first degree murder, the admission of any evidence that tended to show a specific intent to kill did not prejudice him.  Accordingly, we are unable to recommend that habeas relief be granted based upon this claim.

### 4.      Failure to request a limiting instruction

Jones claims that his trial counsel was ineffective for his failure to request a limited purpose instruction as to the slow motion video.  (Pet. at 9.)  In its opinion on PCRA appeal, the Superior Court explained why the "limited purpose" instruction claim lacked merit:

> [*Commonwealth v.*] *Hindi,* [631 A.2d 1341 (Pa. Super. 1993)], did not require a cautionary instruction, as argued by [Jones] . . . *Hindi* merely noted that, "Any concern that slow motion or freeze frame may have confused or prejudiced the jury easily could be cured by a cautionary instruction from the trial judge explaining the limited purpose of the slow motion/freeze frame." *Id.* at 1345.  *Hindi* does

> not stand for the proposition that a cautionary instruction is required in every instance. In fact, *Hindi* went on to state that the trial court should not underestimate the ability of the jurors to use common sense. *Id.* As there was no indication that the jury was confused or mislead [sic] by playing the tape in slow motion, a cautionary instruction was not warranted.

*Commonwealth v. Jones,* No. 2719 EDA 2009, slip opin. at 14.

Here again, we find nothing "objectively unreasonable" in the state courts' evaluation of this claim. The state court identified the one published case in Pennsylvania that deals with the admissibility of slow-motion video, and applied it to the circumstances of Jones' trial. We have undertaken a thorough review of the record and also conclude that there was no indication that the jury was confused or misled about the evidentiary value of the slow motion video. Trial counsel cannot be deemed ineffective for failing to request a cautionary instruction when the law did not require one. Furthermore, as to the prejudice prong of *Strickland*, the Superior Court's discussion that the admission of the slow motion video did not prejudice Jones since he was not convicted of first degree murder applies to this claim as well. (*See* discussion on pp. 18-19.) Accordingly, we are unable to recommend that habeas relief be granted based upon this claim.

## IV. CONCLUSION

For the reasons discussed above, we have determined that Jones has not presented any claims that warrant habeas relief. His claims are either procedurally defaulted or without merit.

Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district court judge is required to make a determination as to whether a certificate of appealability ("COA") should issue. A COA should not issue unless the petitioner demonstrates that jurists of reason would find it to be debatable whether the petition states a valid claim for the denial of a constitutional right. As to claims that are dismissed on procedural grounds, the petitioner bears

the additional burden of showing that jurors of reason would also debate the correctness of the procedural ruling.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, for the reasons set forth above, we do not believe a reasonable jurist would find the Court to have erred in dismissing the present petition.  Accordingly, we do not believe a COA should issue.  Our Recommendation follows.

## **RECOMMENDATION**

**AND NOW**, this 16th  day of October, 2013, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED.** It is **FURTHER RECOMMENDED** that a certificate of appealability should **NOT ISSUE**, as we do not believe that Petitioner has made a substantial showing of the denial of a constitutional right or that reasonable jurists would find the correctness of the procedural aspects of this Report debatable.

Petitioner may file objections to this Report and Recommendation. *See* Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE